IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| GEORGE CLARK JR. | § | |
| v. | § | CIVIL ACTION NO. 9:11cv42 |
| DR. EDWARD FOMBY, ET AL. | § | |

MEMORANDUM OPINION AND PARTIAL ORDER OF DISMISSAL

The Plaintiff George Clark Jr., an inmate of the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. The case has been assigned to the docket of the undersigned United States Magistrate Judge for entry of final judgment pursuant to 28 U.S.C. 636(c). As Defendants, Clark named Dr. Edward Fomby, Mark Roberts, Lu Ann Renner, John Allen, Shanta Crawford, and the University of Texas Medical Branch, which has been dismissed from the lawsuit. Of these defendants, Roberts, Renner, and Crawford have answered the lawsuit; Dr. Fomby and Allen are no longer employed by TDCJ or the University of Texas Medical Branch, and so the Court has ordered that the United States Marshal effect service upon them.

In his complaint and at an evidentiary hearing, Clark complained that after dental treatment including oral surgery and tooth extractions, Dr. Fomby caused his bottom denture plate to be realigned and adjusted without first taking an impression to ensure a proper fit. As a result, this adjusted plate did not fit properly, and caused pain and mouth sores when Clark tried to wear it; he could not eat properly and it cut into his gums whenever he bit down. Clark stated that he complained to the defendants, but they ignored his complaints and failed to take any appropriate action.

Specifically, Clark says that Crawford was the former practice manager at the Eastham Unit, and Roberts took her place. He stated that Roberts just goes along with whatever the doctors say,

and says that the dentists "could have done a better job." He conceded that the practice managers are not over the dentists and don't tell the dentists what to do, saying "I know that now, I didn't know it then."

With regard to Lu Ann Renner, Clark stated that she is the patient liaison. He said that he tried to get some outside help from Dr. Paul Collins and Ms. Gerri Collins, who teach at the Eastham Unit. Clark stated that he sent a letter to them, but Renner sent a letter which made them think that Clark was lying, because her letter indicated that Clark had not put in a complaint, but Clark explained that he had been told not to put in a complaint.

After filing their answer, the Defendants Renner, Crawford, and Roberts filed a motion for summary judgment on March 15, 2012. Clark sought an extension of time in which to respond, which was granted to July 9, 2012, but he has not filed a response to the motion for summary judgment despite having had ample time in which to do so.

## The Motion for Summary Judgment

The Defendants' motion for summary judgment argues first that Clark failed to exhaust his administrative remedies against them. They state that between January 1, 2010, and November 22, 2011. Clark filed four Step One grievances, of which he properly exhausted two by taking them through the Step Two appeal process. One of these grievances concerned the confiscation of his headphones, while the other concerned his dentures.

The Defendants contend that this grievance raised complaints only against Dr. Fomby and another dentist, Dr. Neagle, making no mention of Roberts, Renner, or Crawford. As a result, they say, Clark failed to exhaust his administrative remedies as to his claims against them.

Next, the Defendants assert that they are entitled to qualified immunity because their actions were objectively reasonable. They state that Clark has failed to show that he was subjected to deliberate indifference to his serious medical needs. According to the medical records, the Defendants say, Clark was seen by Dr. Fomby on February 19, 2010, to reline his upper full dentures. At this appointment, the records show that Clark said that he wanted to get the last two remaining

teeth on the lower extracted and to get a new denture, and was told that the dental department could remove the lower teeth and add them to his lower partial denture, and it would serve as a full denture. A treatment plan was made to add the teeth to the lower partial, and if needed, the doctor would reline the lower to make it fit better. An impression was made for the lab to add the teeth to the lower partial and convert it to a lower full.

On April 9, 2010, the Defendants say, Clark's two lower teeth were removed and inserted into the denture, and it appeared to fit well; however, on April 20, Dr. Neagle saw Clark on a complaint that his mouth was sore and he could not wear the dentures. Dr. Neagle thought that a surgical procedure called an alveoloplasty, the removal of buccal bone, would allow Clark to insert and wear the dentures. The surgery was performed on April 29, 2010, but Clark filed a grievance a week later complaining about the fit of his lower dentures. He was seen by Dr. Neagle the next day, who made a treatment plan to reline the dentures, and to instruct Clark to wear the dentures and eat with them. Although Clark said that he ate better without them, Dr. Neagle stated that Clark would never learn how to eat with dentures if he did not try. On June 3, 2010, Clark was seen for an impression to reline his dentures, and on July 23, 2010, he received his relined dentures.

The Defendants state that neither Crawford nor Renner received a copy of Clark's Step One grievance. Roberts did receive a copy for response, and responded to the grievance by stating that Clark's complaint had been addressed through the performing of surgery on April 29, and that Clark was scheduled for an exam to access his complaint. The medical records show that Clark was seen by a dentist on May 11, June 3, and June 23, 2010, for relining of his dentures.

The Defendants state that Clark also filed informal grievances on August 27, 2010, and January 9, January 11, and July 18, 2011. All of these informal grievances were responded to by Roberts, who reviewed Clark's medical records to ensure that Clark was been seen by the dental providers. The Defendants contend that they had no personal involvement in any denial of dental care and that in fact Clark's complaints were routinely addressed by the dental providers, and that because they acted reasonably, they are entitled to qualified immunity. The Defendants also contend

that they are entitled to Eleventh Amendment immunity against damages in their official capacities, and that Clark has not shown entitlement to declaratory or injunctive relief.

## The Summary Judgment Evidence

The first item of summary judgment evidence provided by the Defendants is Clark's grievances. The relevant grievance concerning Clark's dental care is grievance no. 2010150261. The Step One grievance, signed on May 6, 2010, reads as follows:

> I am grieving the fact that the dentures I've had for the past several years no longer fit due to the fact that they weren't properly adjusted to fit my mouth following dental treatment. I had two teeth pulled, and instead of taking an impression of my mandible in order to adjust my dentures, my bottom denture was sent to Ellis I by DE Fomby and two teeth were added to the plate. However, because an impression wasn't done prior to the alteration, the denture no longer fits in my mouth properly and is in fact painful to wear. I've also since then had oral surgery which has also caused the dentures to no longer properly fit. I cannot function and eat properly without my dentures. I've had them for years, and I feel that I am entitled to have them properly repaired or entirely replaced at this juncture. It's through no fault of my own that they have been rendered unusable. I am requesting action be taken forthwith to adequately repair or replace my dentures.

The response to this grievance, signed by practice manager Mark Roberts, reads as follows:

> Chart review shows your complaint was addressed by the dentist on April 29, 2010, for mandibular alveoloplasty was performed. You are scheduled with the dentist for an exam to access your complaint about your dentures.

The Step Two appeal of this response, signed by Clark on June 1, 2010, reads as follows:

> This Step One response has not sufficiently addressed my complaint. Prior to my denture being sent to Ellis Unit by Mr. Fomby, they fit me properly and I was able to eat my meals. The fact is that no alterations should have been made to my denture without first taking a new impression to make allowances for the teeth that were pulled. There is no proper way to adjust dentures without an impression when teeth have been removed, and because that was done to mine I am no longer able to wear dentures that I have had for several years. I am requesting that I have new impressions taken and dentures made from those impressions so I can once again properly eat.

The response to this grievance appeal reads as follows:

> The Step 1 alleges your dentures were altered by dental due to additionally extractions [sic] and that they no longer fit properly. No date was provided regarding your allegation to assist in the investigation of your complaint.
>
> Appellate review of your clinical record for the grievable time period reveals no documented sick call requests to dental with your complaints of your dentures no longer fitting. However, the record does document that you were seen by dental on

4

> 4-29-2010 for oral surgery to remove the new bone which formed after your tooth extractions, resulting in you not being able to wear your dentures due to pain. There is no documentation regarding how your dentures fit. Since then you have been seen numerous times and your denture has been re-lined. On 8-9-2010 it is documented that the denture policy was explained to you and you had your dentures adjusted again.
>
> Per the Offender Orientation Handbook, you have only 15 days from the date of the alleged incident or occurrence of the incident to complete and forward the grievance to the Unit Grievance Investigator. Because you failed to provide a specific date regarding your allegation, your clinical record was initially reviewed for the 15 days prior to the filing of the Step 1. You may wish to review the handbook for further information and education. In order to expedite resolution of medical complaints, you are encouraged to utilize the facility's medical complaints process by contacting the facility medical complaints coordinator before filing a grievance. No further action through the grievance mechanism is warranted.

After including some documents relating to the investigative process for the grievance, the Defendants attach as an exhibit a message from Dr. Fomby to Roberts. This message reads as follows:

> On 2/19/10 pt was scheduled to reline full upper denture and said he wanted to get the last two remaining teeth on the lower extracted and a new denture. He was told that we could remove the lower teeth and add them to his lower partial denture and it would probably serve as a full. A tx [treatment] plan was made to add the teeth to the lower partial and when they came back from the lab to extract the teeth and insert the lower denture. If needed we were going to reline the lower to make it fit better. An impression was made for the lab to add the teeth to the lower partial and convert it to a lower full.
>
> 4/9/10 the two lower teeth were removed and the lower inserted which appeared to fit well.
>
> 4/20/10 Dr. Neagle saw the pt on sick call, because the lower was making him sore and though that a lower alveoloplasty would benefit the patient.
>
> 4/29/10 Dr. Neagle performed the mandibular alveoloplasty.
>
> From the grievance it appears it will be necessary to reline the lower as originally planned.

The Defendants next include a copy of a complaint from Clark saying that his mouth was sore. This complaint was received on May 10, 2010, and the response says "exam." The next item is a record of the surgery performed by Dr. Naegle on April 29, 2010, and then a record of the examination on April 20 where it was determined that the surgery was needed.

The Defendants' next exhibits are a set of medical records in reverse chronological order. On May 11, 2010, Clark complained that his mouth was sore and he could not wear his dentures. Dr. Neagle noted that Clark was edentulous (i.e. lacking teeth) and adjusted the upper and lower dentures. Clark said that they felt fine but that he would not use them until they were relined. Dr. Neagle told him to use them and that he would never learn how to eat with dentures if he didn't try.

On June 3, 2010, Clark complained that his lower dentures did not fit, and so Dr. Fomby took impressions. On July 23, the dentures were relined, but Dr. Fomby noted that the bite may need some adjustment in the future. Four days later, Clark complained that the bottom plate did not match the top because of oral surgery; he indicated that the plate was too large and hurt his mouth. Dr. Fomby performed an adjustment. On August 3, Clark again complained that the bottom plate would not let him eat and that the plate "moves up and down. Dr. Fomby again performed an adjustment. On August 9, 2010, an entry by Dr. Fomby, reflects that Clark complained that he was having trouble with his bottom teeth and asking for a new plate. Dr. Fomby explained the TDCJ denture policy and that Clark has no medical reason for dentures, and noted that his lower denture had recently been relined and would not stay seated, and was possibly "overextended on lingual." He noted that he adjusted the lower denture on the lingual (i.e. near the tongue) and said that Clark could return to the clinic as needed by filing a sick call request.

In Exhibit B of their summary judgment evidence, the Defendants furnish an affidavit from Rossina Valladares, the unit practice manager at the Holliday Unit. This affidavit says that as practice managers, Roberts and Crawford have no responsibility for the actual provision of medical or dental services, but instead assure that patients have appropriate access to services provided by persons with medical training, including advising patients on how to request certain medical services where necessary.

In this case, Valladares says that between January 1, 2010, and March 8, 2012, the date of her affidavit, Clark had filed 20 requests for dental care and was seen in the dental clinic 23 times. She mentions the grievance filed by Clark, to which Roberts responded, and says that Clark also

submitted five informal grievances; in each of these, Roberts reviewed Clark's medical records to ensure that Clark was being seen by the dental provider and reported his findings back to Clark.

Valladares states that Crawford was not involved in responding to Clark's grievances at all, and that all of his grievances were responded to by Roberts. These grievances were responded to in a timely and appropriate fashion. Valladares notes that Roberts has no dental training and that it is not within his scope of authority to determine what type of dental care is provided to patients; she says that it is a common misconception among inmates to assume that clinic administrative staff, including practice managers, have control over the type of medical or dental care rendered. Finally, the Defendants include as exhibits copies of the informal grievances submitted by Clark, to which Roberts responded.

## Legal Standards and Analysis

### I. Exhaustion of Administrative Remedies

The Defendants first assert that Clark failed to exhaust his administrative remedies against Renner, Roberts, and Crawford. The chief Fifth Circuit case on the exhaustion requirement is Johnson v. Johnson, 385 F.3d 503 (5th Cir. 2004). In that case, the Fifth Circuit stated as follows:

> Johnson has sued fifteen prison officials, but the defendants contend that he has not exhausted his claims against many of them. In particular, they argue that a claim against a person has been exhausted only if that person was identified in the prisoner's Step One grievance.
>
> We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation. [citation omitted] But, at the same time, the grievance must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit, and for many types of problems this will often require, as a practical matter, that the prisoner's grievance identify individuals who are connected with the problem.
>
> ...
>
> The defendants conceded at oral argument, and we agree, that a grievance can sufficiently identify a person even if it does not provide an actual name; functional descriptions and the like – e.g., a reference to "the guards in the shower room" on a certain date – will suffice.

In Jones v. Bock, 127 S.Ct. at 922, the Supreme Court explained that the PLRA requires exhaustion of "such administrative remedies as are available," but nothing in the statute imposes a "name all defendants" requirement. Instead, the Court stated that compliance with prison grievance procedures is all that is required to properly exhaust; it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

In this case, nothing in Clark's grievances can reasonably be read to place the prison officials on notice that Clark had a complaint against Renner, Roberts, or Crawford. His grievance complained only about the fitting and adjustment of his lower dental plate, a matter over which none of these defendants had any control and in which none of them were involved. Hence, Clark's grievance did not give the prison officials a fair opportunity to address any complaints against Renner, Roberts, or Clark. The Defendants' motion for summary judgment as to exhaustion of administrative remedies is correct and should be granted.

II. The Merits of the Claims

Even beyond this, it is clear that Clark's claims against Renner, Roberts, and Crawford are lacking in merit. The Fifth Circuit has stated that in order to successfully plead a cause of action in civil rights cases, a plaintiff must enunciate a set of facts that illustrate the defendants' participation in the alleged wrong. Jacquez v. Procunier, 801 F.2d 789, 793 (5th Cir. 1986). In this case, the alleged wrong of which Clark complains involves the fitting and adjustment of his lower plate, but he conceded at the evidentiary hearing that the practice managers are not involved in patient care. He has not shown any involvement by the practice managers, Crawford and Roberts, in the facts forming the basis of his claim, nor shown any wrongful action by them; as stated at the evidentiary hearing, the practice managers are involved in such matters as scheduling appointments, and Clark makes no complaints concerning the scheduling of appointments. The summary judgment evidence reflects that he has had considerable access to the dental clinic and has been seen by dental providers on multiple occasions.

Nor does the fact that Roberts answered his Step One grievance and his informal grievances set out any basis for a claim under Section 1983. The Fifth Circuit has held that inmates do not have a constitutionally protected liberty interest in having grievances resolved to their satisfaction, and so there is no violation of due process when prison officials fail to do so. Geiger v. Jowers, 404 F.3d 371, 373-74 (5th Cir. 2005); *see also* Edmond v. Martin, 100 F.3d 952, 1996 WL 625331 (5th Cir., Oct. 2, 1996) (prisoner's claim that a defendant "failed to investigate and denied his grievance" raises no constitutional issue; Thomas v. Lensing, et al., 31 Fed.Appx. 153, 2001 WL 1747900 (5th Cir., Dec. 11, 2001) (same). To the extent that Clark complains that Roberts did not answer his grievance to his satisfaction, this claim is without merit.

Clark testified at the evidentiary hearing that he had contacted some teachers in Huntsville from whom he had taken classes, Dr. Paul Collins and Ms. Gerri Collins, asking for help. They wrote to the patient liaison, Renner, and she wrote them a letter in response; Clark complained that the way that Renner worded her letter "made it look as if he was lying." Even assuming this is correct, Clark has failed to show that Renner's letter amounts to a Section 1983 violation. *See generally* Thomas v. Kippermann, 846 F.2d 1009, 1010 (5th Cir. 1987) (a plaintiff alleged that the defendants provided false information to a newspaper, which then printed it; the Fifth Circuit held that the allegations implicated the plaintiff's reputation alone, which was not sufficient to invoke constitutional protections), *citing* Paul v. Davis, 424 U.S. 693 (1976). Clark has failed to set out any viable Section 1983 claims against Renner, Roberts, or Crawford.

### III. Qualified Immunity

In their motion for summary judgment, the Defendants raise the defense of qualified immunity. The invocation of qualified immunity applies to claims for monetary damages brought against a government official in his or her individual capacity. The Fifth Circuit has stated that a qualified immunity defense serves to shield a Government official from civil liability for damages based upon the performance of discretionary functions if the official's actions were reasonable in light of then clearly existing law. Atteberry v. Nocona General Hospital, 430 F.3d 245, 253 (5th Cir.

2005), *citing* Thompson v. Upshur County, 245 F.3d 447, 456 (5th Cir. 2001). To prevail in a §1983 lawsuit, a plaintiff must overcome an officer's defense of qualified immunity. *See* McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (noting that when a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense).

The Fifth Circuit has stated that to discharge this burden, the plaintiff must satisfy a two-prong test. First, he must claim that the defendants committed a constitutional violation under current law, and second, that the defendant's actions were objectively unreasonable in light of the law which was clearly established at the time of the actions complained of. Atteberry, 430 F.3d at 253; Kinney v. Weaver, 367 F.3d 337, 349-50 (5th Cir. 2004). These two prongs may be considered in either order. Saucier v. Katz, 533 U.S. 194, 201 (2001).

In this case, Ross has not shown that Renner, Roberts, or Crawford acted in a way which was objectively unreasonable in light of clearly established law. Nor does it show that any constitutional violations resulted from any actions taken by Renner, Roberts, or Crawford. Consequently, these Defendants are entitled to the defense of qualified immunity.

The Defendants also invoke the defense of Eleventh Amendment immunity from claims for damages brought against them in their official capacity. The Fifth Circuit has held that the Eleventh Amendment bars recovery of monetary damages under 42 U.S.C. §1983 from state officials sued in their official capacity. Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2002). To the extent that Clark may be suing Renner, Roberts, or Crawford for monetary damages in their official capacity, such claims are without merit.

Finally, Clark seeks injunctive relief in his complaint, in the form of "an injunction ordering my dentures be properly fitted or replaced." However, the practice managers and the patient liaison have no power or authority to fit or replace Clark's dentures, inasmuch as they are not patient care providers and have no authority over patient care providers. *See* Okpalobi v. Foster, 244 F.3d 405, 427 (5th Cir. 2001) (injunction against state official is "utterly meaningless" where official against

whom the injunction is granted lacks the power to redress the asserted injuries). Clark's request for injunctive relief thus lacks merit.

## Conclusion

On motions for summary judgment, the Court must examine the evidence and inferences drawn therefrom in the light most favorable to the non-moving party; after such examination, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Securities and Exchange Commission v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1994); General Electric Capital Corp. v. Southeastern Health Care, Inc., 950 F.2d 944, 948 (5th Cir. 1992); Rule 56(c), Fed. R. Civ. P.

To avoid summary judgment, the non-moving party must adduce admissible evidence which creates a fact issue concerning existence of every essential component of that party's case; unsubstantiated assertions of actual dispute will not suffice. Thomas v. Price, 975 F.2d 231, 235 (5th Cir. 1992), *citing* Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Fifth Circuit has stated that once the moving party has met its burden, the non-movant must direct the court's attention to admissible evidence in the record which demonstrates that it can satisfy a fair-minded jury that it is entitled to a verdict in its favor. ContiCommodity Services, Inc. v. Ragan, 63 F.3d 438, 441 (5th Cir. 1995).

Summary judgment should be granted when the moving party presents evidence which negates any essential element of the opposing party's claim, including a showing that an essential element of the opposing party's claim is without factual support. First American Bank & Trust of Louisiana v. Texas Life Ins. Co., 10 F.3d 332, 334 (5th Cir. 1994). The granting of summary judgment is proper if the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Caldas & Sons v. Willingham, 17 F.3d 123, 126 (5th Cir. 1994). Once the movant makes this showing, the burden shifts to the non-movant to

come forward with evidence sufficient to establish the existence of a genuine issue of material fact. Caldas, 17 F.3d at 126-27.

Although the Court must draw all inferences in favor of the party opposing the motion, an opposing party cannot establish a genuine issue of material fact by resting on the mere allegations of the pleadings. Hulsey v. State of Texas, 929 F.2d 168, 170 (5th Cir. 1991); *see also* Gordon v. Watson, 622 F.2d 120 (5th Cir. 1980) (litigants may not oppose summary judgment through unsworn materials). Similarly, a bald allegation of a factual dispute is insufficient, in itself, to create a genuine issue of material fact. Recile, 10 F.3d at 1097 n.15. A non-movant cannot manufacture a factual dispute by asking the Court to draw inferences contrary to the evidence. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In short, a properly supported motion for summary judgment should be granted unless the opposing party produces sufficient evidence to show that a genuine factual issue exists. Hulsey, 929 F.2d at 170, *citing* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

As noted above, the Fifth Circuit has stated that once the defendants have shifted the burden to the plaintiff by properly supporting their motion for summary judgment with competent evidence indicating an absence of genuine issues of material fact, the plaintiff cannot meet his burden by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence. Little, 37 F.3d 1069 at 1075. The court added that "summary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the non-movant." Little, 37 F.3d at 1075. Instead, in order to meet his burden, the plaintiff must identify specific evidence in the record, and articulate the precise manner in which that evidence supports his claims; as for material facts on which the plaintiff will bear the burden of proof at trial, he must come forward with evidence sufficient to enable him to survive a motion for directed verdict at trial. Stults v. Conoco, Inc., 76 F.3d 651, 656 (5th Cir. 1996).

Where a motion for summary judgment is filed, the movant has the initial burden of proof to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law. John v. State of Louisiana Bd. of Trustees for State Colleges and Universities, 757 F.2d 698, 708 (5th Cir. 1985). Once the movant has done so, the burden then shifts to the plaintiff, who must identify specific evidence in the record and articulate the precise manner in which that evidence supports his claims; the district court has no duty to sift through the record in search of evidence to support a party's opposition to summary judgment. Stults, 76 F.3d at 656. As for material facts on which the plaintiff will bear the burden of proof at trial, he must come forward with evidence sufficient to enable him to survive a motion for directed verdict at trial. Stults, 76 F.3d at 656; *see also* Johnson v. Deep East Texas Regional Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim).

In this case, the competent summary judgment evidence shows that there are no disputed issues of material fact and that the Defendants Lu Ann Renner, Mark Roberts, and Shanta Crawford are entitled to judgment as a matter of law. It is accordingly

ORDERED that the motion for summary judgment filed by the Defendants Lu Ann Renner, Mark Roberts, and Shanta Crawford (docket no. 26) is hereby GRANTED and that the claims against these Defendants are hereby dismissed with prejudice. It is further

ORDERED that the Defendants Lu Ann Renner, Mark Roberts, and Shanta Crawford are hereby DISMISSED as parties to this lawsuit. The dismissal of these claims and parties shall have no effect upon the remaining claims and parties in this case. Finally, it is

ORDERED that the Defendants' motion to seal their motion for summary judgment (docket no. 25) is hereby GRANTED.

So **ORDERED** and **SIGNED** this **26** day of **July, 2012.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE